# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1577 | **DATE** | 8/8/2000 |
| **CASE TITLE** | ANN RABIN vs. PROVIDENT LIFE,etc.,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to strike is granted in part and denied in part. Genuine issues of material fact exist which preclude judgment as a matter of law on the claims presented by the parties. Therefore, Plaintiff's, Defendant Provident and Defendant Mass Mutual's motions for summary judgment are denied. This case is set for a status hearing on August 23, 2000 at 9:15a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | AUG 0 9 2000 | date docketed | | |
| ✓ | Docketing to mail notices. | | | | 108 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | | |
| TBK | courtroom deputy's initials | 00 AUG -8 PM 2: 41 | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANN SCHWARTZ RABIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. 98 C 1577** |
| | ) | **Paul E. Plunkett, Senior Judge** |
| PROVIDENT LIFE AND ACCIDENT | ) | |
| INSURANCE COMPANY and | ) | |
| MASSACHUSETTS MUTUAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

AUG 0 9 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Ann Schwartz Rabin ("Rabin") has sued defendants Provident Life and Accident Insurance Co. ("Provident") and Massachusetts Mutual Life Insurance Co. ("Mass Mutual") for: (1) a declaration that they are obligated to pay her disability benefits (Counts I, II and IV); (2) recovery under the Illinois Insurance Code for their bad faith denial of her disability claims (Counts III and VIII); and (3) promissory estoppel (Count VI) and waiver (Count VII) with regard to Mass Mutual's denial of her disability claims.[1] Rabin, Provident and Mass Mutual have each filed motions for summary judgment. Further, in conjunction with these motions, Provident filed a motion to strike portions of Rabin's affidavit and local rule statement in support of her motion for summary judgment. Mass Mutual joined this motion. For the reasons provided in this Memorandum Opinion

---

[1]     Plaintiff's Second Amended Complaint does not contain a Count V.

-1-

and Order, the Court grants in part and denies in part defendants' motion to strike and denies all

parties' motions for summary judgment.

## Facts[2]

As a preliminary matter, we review this case pursuant to our jurisdiction over matters

between residents of different states. There is complete diversity of citizenship between plaintiff and

defendants,[3] and Rabin seeks damages in excess of $75,000.00. Thus, we have jurisdiction over this

matter pursuant to 28 U.S.C. § 1332.

This dispute surrounds Rabin's alleged entitlement to disability insurance benefits under

policies issued by defendants. Rabin claims she is disabled due to an allergy to latex, which

allegedly prevents her from practicing medicine in her occupation as an ophthalmologist/corneal

surgeon. The facts of plaintiff's claimed disability apply equally to both defendants, although they

must be interpreted in light of the different policy terms under each defendant's policies.

In 1990, when Rabin applied for and received disability insurance policies from Provident

and Mass Mutual, she was a physician practicing as a clinical ophthalmologist. (Pl.'s LR 56.1(a)(3)

Stmt.[4] ¶¶ 10, 17.) In 1991, Rabin became board certified in ophthalmology. (Id., Ex. A., Rabin Aff.

---

[2]     These facts are undisputed and are taken from the parties' statements filed in
accordance with this district's local rule ("LR") 56.1.

[3]     Rabin is a citizen and resident of the State of Illinois, Provident is a citizen and
resident of the State of Tennessee with its principal place of business in Chattanooga, Tennessee,
and Mass Mutual is a citizen and resident of the State of Massachusetts with its principal place of
business in Springfield, Massachusetts.

[4]     Plaintiff incorrectly filed her statement of facts in support of her motion under the
former local rule number 12(M).  We refer to it under the proper number, LR 56.1(a)(3).

¶¶ 3, 5.) In 1993, while Rabin was performing an operation, she experienced sneezing, itching eyes, hives on her hands and trouble breathing. (Mass Mutual's LR 56.1 Comb. Stmt.[5] ¶ 20.) A week later, Rabin saw Dr. Robert Bush, an allergist, who thereafter diagnosed her with an allergy to latex. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 10.) Allergic reactions to latex can include any one of the following: sneezing, coughing, wheezing, asthma, rhinitis, and/or anaphylactic shock (the last of which can result in death). (Id. ¶¶ 19, 20.) There is no known cure for a person suffering from latex allergy other than non-exposure to latex. (Id. ¶ 21; id., Ex. G, Dr. Kevin J. Kelly Aff. ¶ 18.)

In April 1993, Rabin began working at Physicians Plus Medical Group ("Physicians Plus") in Madison, Wisconsin where she was one of five ophthalmologists. (Provident's LR 56.1 Comb. Stmt.[6] ¶ 17.) She worked on a part-time basis for Physicians Plus because she wanted to devote time to her family. (Id. ¶ 16; Provident's App., Ex. A, Rabin Dep. at 44.) She made it clear to her new employer that she needed to minimize her exposure to latex, that her surgeries had to be done the first case of the day, that she needed to wear non-latex gloves and that people working around her also need to wear non-latex gloves. (Mass Mutual's LR 56.1 Comb. Stat. ¶ 25.) During her 30 month employment with Physicians Plus, Rabin performed 27 corneal surgeries. (Id. ¶ 44.) The operating room used by Rabin for surgeries was cleared of any equipment and other items containing latex. (Id. ¶¶ 29, 36-40.) However, during at least two surgeries, Rabin experienced a latex reaction

---

[5]    Mass Mutual and Provident filed their own statements of facts in support of their motions for summary judgment. Defendants titled their statements as "Combined Statements" because each presented two sets of statements as one under LR 56.1(a)(3) (statements in support of summary judgment) and LR 56.1(b)(3)(B) (additional statements in response to plaintiff's LR 56.1(a)(3) statements). Because the defendants did not distinguish between those statements filed according to LR 56.1(a)(3) and LR 56.1(b)(3)(B), we cite to their statements as LR 56.1 Combined ("Comb.").

[6]    See n.5 supra.

that involved sneezing, coughing and itching.  (Id. ¶ 45; Provident's App., Ex. A, Rabin Dep. at 174.)  In these instances, she was able to complete the surgeries.  (Id. ¶ 47; Provident's App., Ex. A., Rabin Dep. at 174.)  Rabin estimated that she spent ten percent of her time at Physicians Plus on corneal surgery.  (Id. ¶ 49; Provident's App., Ex. A, Rabin Dep. at 197.)

In addition to corneal surgery, Rabin primarily examined patients at Physicians Plus.  (Id. ¶ 50.)  She recalled one incident during an exam where she suffered itching, sneezing and wheezing when she mistakenly placed her hand in a box of latex gloves.  (Id. ¶ 51; Provident's App., Ex. A, Rabin Dep. at 55-56.)  Rabin was able to complete the procedure, but had to receive breathing treatments with medicine for an hour thereafter.  (Provident's App., Ex. A., Rabin Dep. at 56-57.)  Other than that occurrence, Rabin estimates that she suffered "mild problems" such as itching, wheezing and sneezing between five and fifteen times while employed by Physicians Plus.  (Mass Mutual's LR 56.1 Comb. Stat. ¶ 54; Provident's App., Ex. A, Rabin Dep. at 68, 71.)

Rabin left her employment with Physicians Plus on July 31, 1995 in order to move to Naperville, Illinois with her husband and two children.  (Pl.'s LR 56.1(a)(3) Stmt. ¶ 26.)  After she moved to Illinois, Rabin had several discussions with Dr. E. Lee Stock, an ophthalmologist, with regard to part-time employment possibilities.  (Provident's LR 56.1 Comb. Stmt. ¶¶ 86, 88; Provident's App., Ex. A, Rabin Dep. at 127, 128; id., Ex. J., Edwin Lee Stock Dep. at 27-28.)  During at least one of these discussions, Rabin mentioned her latex allergy to Dr. Stock, who promised he could make his office a latex-safe environment as long as she did not perform any surgeries.  (Id. ¶ 89; Provident's App., Ex. A, Rabin Dep. at 128-29.)  Dr. Stock offered and Rabin initially accepted a position in his office.  (Id. ¶ 93; Provident's App., Ex. J, Stock Dep. at 37.)  However, Rabin later withdrew her acceptance because her children were having trouble adjusting

to the move and she wanted to get "the kids squared away" before working for Dr. Stock. (Id. ¶ 95; Provident's App., Ex. A, Rabin Dep. at 128.) Rabin never went to work for Dr. Stock, and she did not pursue employment opportunities with anyone other than Dr. Stock. (Id. ¶¶ 87, 97.)

Rabin and her husband, also a doctor, met with their insurance agent, Michael A. Sobel, in late 1995 to review their insurance coverage. (Id. ¶¶ 103, 104.) As a result of that meeting, in the spring of 1996, Sobel, on Rabin's behalf, pursued disability benefits from Provident and Mass Mutual for Rabin's latex allergy. (Id. ¶¶ 106-07, 109-14; Mass Mutual's LR 56.1 Comb. Stmt. ¶¶ 97, 99.) In May and July 1996, Rabin submitted her claims to Mass Mutual and Provident, respectively, for disability benefits surrounding her latex allergy. (Mass Mutual's LR 56.1 Comb. Stmt. ¶ 100; Provident's LR 56.1 Comb. Stmt. ¶ 113.) As a part of her claims, Rabin submitted to defendants an Attending Physician's Statement ("APS") filled out by Dr. Bush. (Mass Mutual's LR 56.1 Comb. Stmt. ¶ 66; Provident's LR 56.1 Comb. Stmt. ¶ 72.) At the time of the APS, Dr. Bush had not seen Rabin as a patient since March 30, 1994, and never saw her thereafter. (Provident's LR 56.1 Stmt. ¶ 64.) He did not know the status of Rabin's latex allergy in 1995 or 1996. (Id. ¶¶ 68-70.)

Rabin cannot identify the point in time when she considered herself disabled from her occupation. (Id. ¶ 65; Provident's App., Ex. A, Rabin Dep. at 154-55.) She testified that she realized on her own several months after September 1995 that she could not return to corneal surgery due to her allergy to latex. (Id. ¶ 71; Provident's App., Ex. A, Rabin Dep. at 155.)

Subsequent to the time Rabin submitted claims to defendants in May and July 1996, she saw allergist Dr. Leo Gutt on October 10, 1996. (Id. ¶ 82.) A few months later, in February 1997, Rabin went to Dr. Julie Hutson for her latex allergy. (Id. ¶ 83.) She was seen by Dr. Hudson for her latex

allergy several times in 1997 and continued to see her in three month intervals. (Id. ¶ 84.) In April 1997, Dr. Hudson submitted an APS to Mass Mutual which stated that Rabin was "continuously totally unable to work" as an ophthalmologist surgeon from February 17, 1997 to the present. (Mass Mutual LR 56.1 Comb. Stmt. ¶ 76; Mass. Mutual's App., Ex. 2, Ex. 133.) In July 1998, Rabin was examined by Dr. Kevin J. Kelly, a clinical allergist and immunologist, who opines that Rabin is "completely disabled" from performing corneal surgery. (Pl.'s LR 56.1(a)(3) Stmt., Ex. G, Kelly Aff. ¶¶ 11, 16.)

**Provident's Policies and Denial of Benefits**

Provident issued two policies to Rabin in 1989 and 1990. On May 10, 1989, in consideration of a base annual premium of $592.67, which has since increased to at least $1,034.00, paid by Rabin to Provident, Provident executed and delivered to Rabin policy number 06-337-4008446, insuring Rabin for loss from disability due to sickness at the rate of at least $2,250.00 per month ("Monthly Benefit"). (Pl.'s LR 56.1(a)(3) Stmt. ¶ 6; id., Ex. B.) At the time of the policy, Rabin was completing her fellowship at the University of Michigan. (Provident's LR 56.1(b)(3)(A) Stmt. ¶ 10; Provident's App., Ex. A, Rabin Dep. at 10.) Over a year later, on September 14, 1990, Provident issued Rabin a second policy under number 06-337-4035010 insuring Rabin for loss from disability due to sickness at a Monthly Benefit rate of at least $2,090.00 in consideration of a base annual premium of $615.10 paid by Rabin to Provident, which has since increased to $1,024.00. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 8; id., Ex. C.) Rabin was working as a clinical ophthalmologist at the time she applied for the second policy. (Id. ¶ 10; id., Ex. C.) Both policies have identical language and are

collectively referred to by the parties as the "Provident Policies." Rabin has continued to pay premiums on the Provident Policies since the time she submitted her claim. (Id. ¶ 35.)

The Provident Policies provide that Monthly Benefits are to be paid in the event of "Total Disability" after a waiting period of 90 days. (Id. ¶¶ 7, 9.) "Total Disability" is defined in the Provident Policies as: "[D]ue to Injuries or Sickness: 1. you are not able to perform the substantial and material duties of your occupation; and 2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you." (Id. ¶ 11; id., Exs. B and C at 4.) "Occupation" is defined as: "the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation." (Id. ¶ 12; id., Exs. B and C at 4.) Under the "Notice of Claim" term of the Provident Policies, Rabin must give written notice of claim within 20 days after a covered loss starts or as soon as reasonably possible. (Provident's LR 56.1 Comb. Stmt. ¶ 9; Pl.'s LR 56.1(a)(3) Stmt., Exs. B and C at 18.)

Provident received written notice of Rabin's claim, including her statement of claim and APS signed by Dr. Bush, for total disability benefits on July 9, 1996. (Provident's LR 56.1 Comb. Stmt. ¶¶ 72, 113; Provident's App., Ex. T.) On September 12, 1996, by letter to Rabin's agent Sobel, Provident informed Rabin that she had failed to adhere to the Notice of Claim provision of the Provident Policies because she had not timely filed her claim. (Id. ¶ 119; Provident's App., Ex. R.) While it asked Sobel to provide the reasons for Rabin's failure to comply with this term of the Policies, it further stated that it would continue to investigate the claim "in the interim." (Provident's App., Ex. R.) Rabin responded by letter dated October 1, 1996, concerning the "timing of her

claim." (Provident App., Ex. A, Rabin Dep., Ex. 27.) She stated that she filed her claim when she did because she was unaware she was eligible for benefits until she met with Sobel and that she attempted to continue her career by working "part-time and decreasing [her] exposure to latex." (Id.) A few weeks later, on October 23, 1996, Provident notified Rabin that it declined to pay her disability benefits. (Provident's LR 56.1 Comb. Stmt. ¶ 116.) In its denial letter, signed by Provident claim consultant Paul Douglass, Provident stated:

> We have reviewed the material regarding your claim of total disability commencing July 31, 1995.
> We have concluded, from the information received to date, that your termination from Physician Plus Medical Group, was voluntary on your part for personal reasons of relocation. That at the time of your employment you were working part time by your own choice and that full time work was available to you.
> In addition your past employer advises that accommodations were made, allowing you to work, even with your sensitivity to latex.
> It appears appropriate to consider that you became unemployed by your own choice and not as a result of sickness or accident. In view of this information it appears that no benefits are payable, at this time, considering Latex sensitivity does not impair your ability to perform the material and substantial duties of an unemployed person. Should you have any additional information you desire brought [sic] to our attention, please forward this information to my attention immediately.

(Pl.'s LR 56.1 (a)(3) Stmt., Ex. H.) There was no further correspondence between Rabin and Provident until she served them with the instant lawsuit.


**Mass Mutual's Policy and Denial of Benefits**

Mass Mutual's predecessor in interest, Connecticut Mutual Life Insurance Company ("Connecticut"), issued to Rabin its Policy Number 8,013,611, insuring Rabin for loss of income from disability due to sickness at the rate of at least $300.00 per month in consideration of a base annual premium of $88.01, which has since increased to $384.00. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 13;

id., Ex. D.) Connecticut thereafter assigned its rights and obligations thereunder to Mass Mutual. (Id.)

Mass Mutual's Policy provides, in relevant part, that benefits will be paid in the event an insured becomes "Totally Disabled." This term is defined as a situation where the insured "cannot perform the main duties of his/her Occupation due to Sickness or Injury. The Insured must be under a Doctor's Care." (Mass Mutual's App., Ex. 1 at 2.) "Sickness" is defined as "[a]n illness or disease that first appears (makes its self known) while the Policy is In Force." (Id.) "Occupation" is defined as "[t]he Insured's regular profession(s) or business(es) at the start of Disability." (Id. at 1.)

Benefits accrue under Mass Mutual's Policy for "Total Disability" "[i]f the Insured is not working in any occupation: We [Mass Mutual] will pay the Total Disability Monthly Benefit shown in the Policy Specifications if the Insured is Totally Disabled and not working in any occupation." (Id. at 3.) Rabin paid an extra premium to obtain an "Own Occupation Rider" on her Mass Mutual Policy. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 116.) This rider entitled Rabin to "Total Disability" benefits even if she was earning income in another profession. (Id.; Mass Mutual's App., Ex. 1 at Own Occupation Rider.) The income received from other work would not be deducted from the face amount of benefits under the Mass Mutual Policy. (Id.)

In 1990, at the time the Mass Mutual Policy was issued, Rabin was a physician practicing as a clinical ophthalmologist, and her duties included corneal surgery. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 17.)

Rabin submitted her claim to Mass Mutual for disability benefits on May 1, 1996, and claimed to be totally disabled from July 31, 1995. (Mass Mutual's LR 56.1 Comb. Stmt. ¶ 100; Mass Mutual's App., Ex. 2, John Dowd Dep., Ex. 106.) In a letter dated December 9, 1996, Mass Mutual approved Rabin's total disability claim commencing July 31, 1995. (Id. ¶ 103; Mass

Mutual's App., Ex. 2, Dowd Dep., Ex. 122.) The approval letter, signed by Mass Mutual claim examiner John Dowd, enclosed an initial disability payment paying her benefits from January 27, 1996 (after the 180 day waiting period) through November 26, 1996. (Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 122.) The letter stated that Rabin would receive a refund of premiums, which she did in February 1997. (Id.; id., Ex. 126.) Shortly before the approval letter was drafted and sent out, Dowd discussed Rabin's claim with his supervisor, Thomas Fidalgo, Director of Disability Claims, who approved Rabin's total disability claim from July 31, 1995. (Mass Mutual's LR 56.1 Comb. Stmt. ¶ 104; Mass Mutual's App., Ex. 2, Dowd Dep. at 41-42.) An internal memorandum authored by Dowd on December 3, 1996, reflected that this meeting occurred and that further investigation would continue with regard to Rabin's "current and past medical condition." (Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 119.) The approval letter to Rabin did not state that Mass Mutual was continuing its investigation of her claim; rather it informed her that she and her doctor were to complete a Disability Progress Report for determination of her eligibility for the next scheduled benefit payment. (Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 122.)

A few days after the date of the approval letter, on December 14, 1996, Mass Mutual requested additional information from Sobel regarding Rabin's tax returns and her additional disability insurance with Provident. (Mass Mutual's LR 56.1 Comb. Stmt. ¶ 106; Mass Mutual's App., Ex. 3, Thomas Fidalgo Dep., Ex. 139.) A few days later, Mass Mutual requested the names and telephone numbers of the adjusters handling Rabin's claim with Provident. (Id. ¶ 107; Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 124.)

In March 1997, pursuant to its request, Mass Mutual received a copy of Provident's denial letter from Douglass, Provident's claim consultant for Rabin's claim. (Pl.'s LR 56.1(a)(3) Stmt. ¶

96.) Shortly thereafter, in a letter dated March 21, 1997, Dowd wrote a letter to Rabin's former employer, Physicians Plus, indicating his understanding that Rabin "resigned from her position for personal reasons on June 5, 1995." (Id. ¶ 98; Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 130.) A month later, Physicians Plus responded to Mass Mutual's inquiry in a letter dated April 18, 1997, where it stated in part that "in April 1995, she [Rabin] informed her department coordinator that she had a latex allergy. Latex gloves were replaced with non-latex . . . . Her letter of resignation, signed June 4, 1995, stated she was moving to Chicago due to 'family considerations.'" (Pl.'s LR 56.1(a)(3) Stmt. ¶ 99; Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 134.) Based on this additional information, on April 29, 1997, Mass Mutual terminated Rabin's disability claim. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 100-01.) The termination letter, drafted and signed by Dowd, stated in part:

> Policy 8013611 states that occupation is the insured's regular profession or business at the start of disability. It also states that there must be a demonstrated relationship between a disability and a loss of income and that the demonstrated relationship with respect to loss of income is a substantial factor in producing the loss. "A disability would not have a demonstrated relationship to a loss of income produced primarily by intervening causes which are not related to the disability."
> We have received a letter from . . . Physicians Plus. . . . Reasonable accommodations were made to assist in your condition. . . . Your letter of resignation indicated family considerations and not a medical condition as the basis of your departure. . . . Under the circumstances it would appear that . . . [the $4,500.00 in disability] benefits should not have been paid. While it is not our intention to seek restitution based upon the information currently in our file, we are sure you will understand our inability to be of additional service on the claim.

(Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 136.)

Dowd's discussion of a "demonstrated relationship" in the termination letter refers to a term in Rabin's policy that appears only with respect to "Partial Disability" benefits. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 109; Mass Mutual's App., Ex. 1 at 2.)

After receiving the termination letter, Rabin resumed paying premiums and remains insured under the Mass Mutual Policy. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 114.)

### Discussion

#### A. Defendants' Motion to Strike

As a threshold matter, the Court will address defendants' motion to strike. In support of her motion for summary judgment, Rabin submitted an affidavit signed by her. Defendants filed a motion to strike portions of Rabin's affidavit and those statements in her LR 56.1(a)(3) statement that rely on those affidavit paragraphs for support.

Defendants seek to strike portions of Rabin's affidavit that they allege run afoul of the rules of evidence. As they point out, Federal Rule of Civil Procedure ("Rule") 56(e) commands that "[s]upporting . . . affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e). This rule "requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted," while conclusory assertions of the general truth of a specific matter do not satisfy the demands of Rule 56(e). Massey v. Zema Sys. Corp., No. 95C3504, 1998 WL 708913, at *5 (N.D. Ill. Sept. 30, 1998). Defendants argue that portions of Rabin's affidavit do not live up to the requirements of Rule 56(e). Specifically, they contend several of Rabin's statements lack foundation, contain inadmissible speculation and/or hearsay, and/or represent inappropriate attempts to render an expert opinion. (Mot. to Strike at 2.)

Rabin states in several paragraphs of her affidavit that "she learned" various things about latex and latex allergies. Defendants seek to strike the following:

| Part of paragraph 7: | "I learned that latex gloves are the principal source of latex found in operating rooms, although other instruments used in the operating rooms contain latex." |
|---|---|
| Paragraph 8: | "I learned there is no known cure for a person suffering from latex allergies other than non-exposure to latex." |
| Paragraph 12: | ". . . I learned more about the nature of latex allergies through medical literature which described the advent and prevalence of latex allergies in the health care field. . . . I realized that I could not return to practicing ophthalmology and corneal surgery, because I would be of danger to myself and my patients. I also realized that during the course of my employment with Physicians Plus I was endangering my own life and perhaps those of my patients because of my potential reaction to latex." |
| Paragraph 13: | "Among other things, I learned that a person exposed to latex can have an anaphylactic reaction and anaphylactic shock can result in death." |

(Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Rabin Aff. ¶¶ 7, 8, 12, 13.)

Defendants argue that the phrase "I learned" establishes that these statements are hearsay because information came from an undisclosed source. Rabin argues that defendants' objection to her "learning" about latex is unfounded because other courts have found that "stating one has 'learned' about various matters is deemed to be one on personal knowledge." (Pl.'s Reply Against Provident at 10 n.5.) However, the two non-circuit cases plaintiff cites for this proposition are distinguishable and do not diminish the hearsay aspects of these statements. See Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 764 (2d Cir. 1991) (affirming trial court's ruling in copyright infringement action against a clothing manufacturer and designer that a witness, a commercial attache in charge of sales for the claimed original designer, possessed sufficient personal knowledge of how the textile design pattern at issue was created to entitle her to testify that she "believed" the pattern was in her studio's possession); Reineke v. Cobb County Sch. Dist., 484 F. Supp. 1252, 1256 (N.D. Ga. 1980) (in an action to enjoin school district from censoring school newspaper, affidavits

stating that affiants "learned" of contents of controversial articles were interpreted as meaning affiants had personal knowledge thereof). In these cases, the courts found that these witnesses could testify to their general observations and knowledge because they did not rely upon conjecture or hearsay to support their testimony. Rabin, on the other hand, does rely on hearsay for several statements and, as discussed below, has not demonstrated her basis for knowing the facts she attempts to assert. Federal Rule of Evidence 602 requires that a witness have personal knowledge of a matter, which can be shown through the testimony of the witness herself or extrinsic evidence. FED. R. EVID. 602; see 27 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 6028 (1990). In her affidavit, Rabin has not shown personal knowledge because there is no foundation for her general assertions that she "learned" certain things. Finally, just because Rabin "learned" about latex does not establish that it is true nor does it diminish the hearsay aspect of her beliefs.

Furthermore, as defendants correctly point out, these statements attempt to improperly inject expert opinions regarding latex into Rabin's affidavit. While it is undisputed that Rabin is board certified in ophthalmology, she is not an allergist nor does she possess specific training relating to allergies or latex to qualify her as an expert on the subjects for which she attempts to testify in her affidavit. Plaintiff argues that as a surgeon she has observed and learned "what everyone in the medical profession knows" about latex. (Pl.'s Reply Against Provident at 10 n.5.) However, we fail to see how her experience as a surgeon makes her qualified to render the specific opinions on latex in the absence of some specific training or schooling on the subject. She further states that her testimony about latex in general is "corroborated" by her and defendants' latex "experts" and allergy physicians. While this may be so, it still does not make it proper testimony for Rabin, a "lay

witness," to assert. Clearly, if plaintiff is offering this evidence to prove the truth of the matters asserted, she has other avenues (her physicians) to introduce this evidence into the record.[7] Thus, we strike the paragraphs quoted above, including the corresponding statement of facts which rely on those statements for support.

In addition to the paragraphs listed above, there are several other statements where Rabin improperly attempts to assert expert opinions:

Part of paragraph 9: "Even then, because of the air borne latex particles the operating room could not be made 'latex free'; nor could latex be completely eradicated from the recovery rooms and other areas in the hospital in which I worked, so I continued to suffer from latex allergies."

Paragraph 15: "I believe that I would be jeopardizing my own health as well as the health of my patients if I were to operate. I also believe that I could not continue to practice corneal surgery consistence [sic] with the dictates of the American Academy of Ophthalmology set forth above."

Paragraph 16: "I believe that I was totally disabled from practicing as a clinical ophthalmologist specializing in corneal surgery at least as of November, 1995. I came to this conclusion in the Spring of 1996."

Part of paragraph 17: "Since there is no known cure for latex, . . ."

(Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Rabin Aff. ¶¶ 9, 15-17.)

As discussed above, Rabin does not have the expertise to render such opinions. Furthermore, Rabin's "realizations" and "beliefs" as testified to in paragraphs 9, 15, and 16 are not supported in her affidavit by independent facts from which she could draw these conclusions. Absent the requisite expertise, plaintiff's beliefs about her condition are not probative of whether or when she

---

[7]    See n.8 infra.

became disabled.[8] Further, her statement in paragraph 16 that she was "totally disabled" is improper as this term has legal significance under the terms of the policies. Thus, those statements from Rabin's affidavit quoted above are deemed stricken from the record, and the corresponding statement of facts which rely on those statements for support are also stricken.

Finally, defendants argue that the last sentence of paragraph 10 should be stricken because it is "belied" by the facts and deposition testimony. (Mot. to Strike at 4.) We disagree. The sentence relates to the time after Rabin moved to the suburbs of Chicago, and she stated that she "intended and desired to return to practicing ophthalmology, specializing in corneal surgery." (Pl.'s LR 56.1(a)(3) Stmt., Ex. A, Rabin Aff. ¶ 10.) While it is true, as defendants point out, that Rabin never worked after her move to Naperville, this does nothing to contradict her intent and desire to return to corneal surgery. Furthermore, defendants have failed to point to anything in Rabin's deposition transcript that contradicts her stated desire and intention. Defendants label this statement a "self-serving declaration." (Mot. to Strike at 4.) While it may be such, it is not a basis to strike it and we find no evidentiary flaws which dictate it be stricken from the record.

## B. Motion for Summary Judgment

Plaintiff has moved for summary judgment on her claims against Provident and Mass Mutual. Defendants have each cross-moved for summary judgment arguing that plaintiff has failed to show facts to support her claims against them.

---

[8] These paragraphs are not admissible to prove the truth of the matters asserted regarding whether and when she became disabled. However, at trial, this testimony may be admissible for other purposes. Except for a footnote in her Reply Memorandum, Rabin failed to address defendants' motion to strike, so we must assume that she offered the paragraphs in her affidavit to prove the truth of the matters asserted regarding latex allergies and her alleged disability.

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The moving party bears the initial burden of identifying the portions of the record which it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We view all evidence and the inferences from it in the light most favorable to the non-moving party. Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d 332, 335 (7th Cir. 1991).

Once a properly supported motion for summary judgment has been filed, the non-moving party must set forth specific facts showing there is a genuine issue for trial. Anderson, 477 U.S. at 248. An issue of fact is genuine only if a jury could reasonably return a verdict for the non-moving party. Id.

For cross-motions for summary judgment, each movant must individually fulfill the stringent requirements necessary to obtain summary judgment under Rule 56. See United Trans. Union v. Illinois Cent. R.R., 998 F. Supp. 874, 880 (N.D. Ill. 1998). The court shall evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant. See Brownlee v. City of Chicago, 983 F. Supp. 776, 779 (N.D. Ill. 1997). With these principles in mind, the Court evaluates the merits of the motions.

**Rabin's Motion Against Provident**

Plaintiff moves for summary judgment against Provident on her Count I (declaration for benefits for Total Disability) or, in the alternative, Count II (declaration for benefits for Residual Disability/Recovery Benefits), and Count III (bad faith claim under Illinois Insurance Code). She believes she is entitled to judgment on these claims because Provident is bound by the terms of its denial letter to her and the "wording" of the Provident Policies. (Pl.'s Mot. Summ. J. at 1.) Provident responds that a genuine issue of material fact exists as to whether Rabin is disabled from her claimed occupation, which, as a result, precludes summary judgment in her favor. (Provident's Resp. Mot. at 1.) We agree.

Rabin argues that Provident cannot assert or rely on any reason to deny her claim for benefits other than the reason set forth in the Provident letter dated October 23, 1996. (Pl.'s Mem. Summ. J. at 5-8.) In that letter, Provident stated that no benefits were payable to her because her latex sensitivity did not impair her ability to perform the material and substantial duties of an unemployed person. Rabin now asserts that Provident has waived or is estopped from contesting Rabin's claim on any other basis including late notice, no appropriate physician care, insufficient proof of loss and/or no inability to perform the substantial and material duties of the occupation in which she was regularly engaged at the time she allegedly became disabled.[9] Provident responds that Rabin has not

---

[9]    In her Reply memorandum, Rabin also argues that Provident's position is barred by the doctrine of "mend the hold." (Pl.'s Reply at 5-6.) Not only did Rabin fail to present this argument in her initial brief to this Court, it is inapplicable to the situation at bar. This doctrine, as explained in Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357 (7th Cir. 1990), addresses the situation where a party asserts a phony defense to the performance of his contractual duty and then upon failure of that defense, comes up with another defense. Provident has not abandoned its initial defense and it cannot be said to be acting in bad faith to point to Rabin's failure to demonstrate proof of loss.

been prejudiced and that it did not clearly and unequivocally express an intention to relinquish its right to assert any defenses available to it under the Policies. (Provident's Resp. at 8.) It further argues that Illinois law requires Rabin to establish that her claim for benefits comes within the terms of the policies, and she as failed to do so. (Id. at 6.)

Both parties, citing Jones v. Universal Cas. Co., 257 Ill. App. 3d 842, 852, 630 N.E.2d 94, 101 (1st Dist. 1994), agree with the proposition that an insurer is estopped to deny coverage on another ground not asserted at the time of denial where the insured has shown that she relied to her detriment upon the insurer's failure to assert a particular defense at the time of denial. Rabin argues that she suffered tremendous prejudice by Provident's failure to raise other defenses at the time it denied her claim. (Pl.'s Reply at 4-5.) Namely, she argues that she could have submitted additional information on the nature of her allergy and other doctor's reports to convince Provident of her disability. However, Rabin did obtain other doctor's opinions on the nature and severity of her disability, reports that Provident now has and continues to dispute. Furthermore, whether Rabin was prejudiced by this or Provident's other unasserted defenses are disputed issues of fact inappropriate for determination under summary judgment. See Western Cas. Sur. Co. v. Brochu, 105 Ill. 2d 486, 499-500, 475 N.E.2d 872, 878 (Ill. 1985) (whether insured has been prejudiced is a question of fact, which must be proved by insured with clear, concise and unequivocal evidence). Thus, Rabin has not demonstrated as a matter of law that she suffered prejudice, and, as a result, Provident is not estopped from raising defenses available to it under the Policies to deny Rabin's claim.[10]

_____

[10] Neither party addresses the six estoppel factors applied by Illinois courts. See National Tea Co. v. 4600 Club, Inc., 33 Ill. App. 3d 1000, 1003, 339 N.E.2d 515, 518 (1st Dist. 1975) (listing factors); see discussion infra at 27-28. While Rabin's and Provident's arguments focus on the prejudice factors of this test, their positions also demonstrate that disputes exist regarding the

Unlike the facts she presented to support her claim under the estoppel doctrine, Rabin presents no facts to show that Provident waived defenses not asserted in its denial letter. Waiver, unlike estoppel, focuses on the actions of the insurer, not the prejudice of the insured. See Essex Ins. Co. v. Stage 2, Inc., 14 F.3d 1178, 1181 (7th Cir. 1994). An insurer waives a defense when it clearly, unequivocally, and decisively expresses an intention or acts in such a manner to imply that it relinquishes its right to assert any and all defenses available to it under the provisions of the contract. See id. Provident did nothing to demonstrate an intent to relinquish its right to rely on the terms of the Policies. Rather, in two letters to Rabin, it presented defenses to Rabin's claim. An insurer is not required to assert every available defense at the time it denies an insured's claim. See Loyola Univ. of Chicago v. Humana Ins. Co., 996 F.2d 895, 901 (7th Cir. 1993). Clearly, Provident relied on its rights within the terms of the Policies before and at the time it denied Rabin's claim. Rabin has offered no evidence of an intention on Provident's part to waive other defenses, and, as a result, Provident is not precluded from asserting defenses available to it under the Policies.

One of Provident's defenses not asserted in its denial letter is that Rabin is not disabled from her claimed occupation as an ophthalmologist/corneal surgeon. (Provident's Resp. at 9-10.) In support of its defense, Provident offers affidavits of two doctors who opine that Rabin is not totally disabled as an ophthalmologist/corneal surgeon. (See Provident's App., Ex. B, Dr. Howard M. Weiner Aff.; id., Ex. C, Dr. Ronald E. Gots Aff.) Rabin argues that we should disregard the affidavits by Provident's doctors because their deposition testimony was a "joke" and they have no basis to formulate opinions on Rabin's disability because they did not examine her themselves.

---

other estoppel factors, namely whether Provident's denial letter amounted to a misrepresentation.

(Pl.'s Reply at 7-10.) Rabin does not ask us to exercise our gatekeeping function to determine whether this expert testimony is relevant and reliable under Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). Rather, she attacks their credibility and alleged allegiances testifying for insurance company defendants, arguments more appropriate for cross-examination of these witnesses at trial.[11] We will not weigh evidence, make credibility determinations or determine the truth of these doctor's opinions on a motion for summary judgment. As a result, Rabin is precluded from summary judgment on Count I because while Rabin's doctors state that she is totally disabled, Provident's doctors opine that she is not. Thus, a genuine issue of material fact exists for trial whether Rabin is entitled to benefits under the "Total Disability" provisions of the Provident Policies.

Rabin also asserts that she is entitled to summary judgment on Count II, her alternative claim for residual, as opposed to total, disability benefits. However, Rabin's claim was evaluated and denied as one for total disability benefits, and she did not, until her First Amended Complaint, raise her claim for residual benefits with Provident. She has failed to submit a proof of loss for these benefits. Furthermore, even if she could argue that her First Amended Complaint satisfied the terms of the contract for these benefits, a genuine issue of material fact exists whether she has a disability, precluding judgment under the terms of the residual disability clause.

---

[11] Rabin also relies (for this argument and other arguments throughout her briefs) on a Memorandum Opinion and Order issued by this Court for another case where we awarded summary judgment on some claims to the insured-plaintiff and against the insurer-defendant, Provident. Stamm v. Provident Life and Accident Ins. Co., No. 96C3311 (September 1, 1998). For the most part, we find Rabin's reliance on this case misplaced and inappropriate. Clearly, the Court has complete knowledge of the facts and circumstances of Stamm, and finds little resemblance to Rabin's situation.

Rabin does not present facts or arguments to support summary judgment on Count III, her bad faith claim under the Illinois Insurance Code. Given that we have denied her motion for summary judgment on Counts I and II, there is a genuine issue of fact whether Provident acted in bad faith to be held liable under Illinois law.


**Provident's Motion for Summary Judgment Against Rabin**

Provident presents a variety of arguments as to why it believes it is entitled to judgment as a matter of law that Rabin is not entitled to disability benefits under the Provident Policies. We will address them in turn.

Provident argues that Rabin's failure to comply with the notice provisions of the Provident Policies bars her recovery and entitles it to judgment as a matter of law. Under the "Notice of Claim" term of the Provident Policies, Rabin must give written notice of claim within 20 days after a covered loss starts or as soon as reasonably possible. (Provident's LR 56.1 Comb. Stmt. ¶ 9; Pl.'s LR 56.1(a)(3) Stmt., Exs. B and C at 18.) Sometime in early March 1996, Sobel, who was assisting Rabin in her disability claims, contacted Provident to secure the necessary disability claim forms. (Provident's LR 56.1 Comb. Stmt. ¶ 107.) Shortly thereafter, on approximately March 13, 1996, Sobel received a letter and forms from Provident. (Id. ¶ 109.) Approximately one month later, Sobel forwarded those forms to Rabin to complete and return to him. (Id. ¶ 110.) Rabin signed the claim form on May 1, 1996. Provident received written notice of Rabin's claim, statement of claim and APS signed by Dr. Bush for total disability benefits on July 9, 1996. (Provident's LR 56.1 Comb. Stmt. ¶¶ 72, 113; Provident's App., Ex. T.) On September 12, 1996, by letter to Rabin's agent Sobel, Provident informed Rabin that she had failed to adhere to the Notice of Claim provision of

the Provident Policies because she had not timely filed her claim. (Id. ¶ 119; Provident's App., Ex. R.) While it asked Sobel to provide the reasons for Rabin's failure to comply with this term of the Policies, it further stated that it would continue to investigate the claim "in the interim." (Provident's App., Ex. R.) Rabin responded by letter dated October 1, 1996, concerning the "timing of her claim." (Provident App., Ex. A, Rabin Dep., Ex. 27.) She stated that she filed her claim when she did because she was unaware she was eligible for benefits until she met with Sobel sometime in late 1995 and that she attempted to continue her career by working "part-time and decreasing [her] exposure to latex." (Id.)

Viewing the facts in the light most favorable to Rabin, we consider whether she filed her claim within the twenty-day deadline under the Policies. In order to determine whether she did, we must determine when her "covered loss" started for purposes of this discussion. In other words, at what point in time was Rabin totally disabled from her occupation? It is undisputed that Provident received Rabin's written notice of claim and APS on July 9, 1996. (Provident's LR 56.1 Comb. Stmt. ¶¶ 72, 113; Provident's App., Ex. T.) In her claim form, Rabin stated that her last day of work was July 31, 1995. (Pl.'s LR 56.1(a)(3) Stmt., Ex. A., Rabin Aff., Ex. 3.) However, she did not answer the question that asked for the dates of "total and complete inability to work." (Id.) Further, Rabin testified that she is unable to pin-point the time when she considered herself disabled from her occupation. (Provident's LR 56.1 Comb. Stmt. ¶ 65; Provident's App., Ex. A., Rabin Dep. at 154-55.) Even though she testified that she realized that she could not return to corneal surgery "several months" after September 1995, this does not establish a concrete date or time for her total

disability.[12] (Id. ¶ 71; Provident's App., Ex. A, Rabin Dep. at 155.) Without a date or time that puts

Rabin's total disability in mid-June 1996, it appears that Rabin's written claim exceeded the twenty-

day deadline.

However, the twenty-day deadline is not set in stone. The Policies read: "Written notice of

claim must be given within 20 days after a covered loss starts or as soon as reasonably possible."

(Provident's LR 56.1 Comb. Stmt. ¶ 9; Pl.'s LR 56.1(a)(3) Stmt., Exs. B and C at 18.) Furthermore,

if the insured has a "justifiable and reasonable excuse for the delay in providing notice, even a

lengthy passage of time is not an absolute bar to coverage." River v. Commercial Life Ins. Co., 160

F.3d 1164, 1170 (7th Cir. 1998). Under Illinois law, there are four factors in assessing the

reasonableness of an insured's delay in providing notice of an insurance claim:

> (1) the language of the policy's notice requirement; (2) the extent of the insured's sophistication in the world of commerce and insurance; (3) awareness on the part of the insured that an "occurrence" has taken place; and (4) once aware of an occurrence, the diligence with which the insured ascertains whether coverage is available.

Ankus v. Gov't Employees Ins. Co., 285 Ill. App.3d 819, 825, 674 N.E.2d 865, 870 (1st Dist. 1996)

(citation omitted).

Under the first criterion of the Ankus test, and as discussed above, the Provident policies

require Rabin to give notice of claim within 20 days or as soon as reasonably possible. Thus, the

policies contemplate that there may be delays in excess of 20 days between the occurrence of loss

---

[12] According to her request for damages in her summary judgment memorandum, Rabin argues that her "covered loss" for benefits began as of November 1, 1995. (Pl.'s Mem. Summ. J. at 15.) While it comes dangerously close to a judicial admission, we will not construe this argument as the date from which Rabin claims total disability. The November 1995 date was presented as an argument in her summary judgment motion and, on its face, appears inconsistent with Rabin's testimony that she cannot identify a date.

and the notice of claim. Concerning the test's second requirement, Rabin asserts that she was not

sophisticated in the world of commerce and insurance. (Pl.'s Resp. to Provident's Mot. Summ. J.

at 7.) She stated in her October 1, 1996 letter to Provident that she was unaware she was entitled to

benefits under the Policies until she reviewed them with her agent Sobel. (Provident's App., Ex. A.,

Rabin Dep., Ex. 27.) This occurred sometime between October and December 1995. (Provident's

LR 56.1 Comb. Stmt. ¶ 104.) While it seems unlikely that Rabin, a highly educated professional

who undoubtedly has some idea from her profession of how insurance works, is "unsophisticated"

in this arena, we accept it as true because we must view the evidence in her favor and defendants

have not presented facts that Rabin had some experience in the world of insurance. However, Rabin

may only claim such unsophistication until her meeting with Sobel in late 1995 where they reviewed

the Policies. Viewing the evidence in a light favorable to Rabin, we will construe her

unsophistication running until December 1995. Regarding the test's third factor, while Rabin clearly

knew since 1993 that she had a latex allergy, her testimony establishes that she did not understand

that it was totally disabling until sometime in late 1995 or early 1996. Again, it is difficult to

establish when Rabin's covered loss began for purposes of determining the reasonableness of her

delay in filing the claim with Provident. Given the standard under which we must view the facts,

we construe this factor in Rabin's favor. Finally, under factor four, it appears that Rabin was diligent

in notifying Provident once she became aware that she was totally disabled from her occupation.

Rabin gave Sobel the authority to act on her behalf to obtain the necessary paperwork from and file

the claim with Provident. While Sobel could have acted in a more timely manner in getting the

claim forms to Rabin and returning them to Provident once he received them back from her, we find

Rabin acted with diligence once she was aware that she was eligible for coverage under the

Provident Policies. Thus, in resolving factual disputes in Rabin's favor, we find that she filed her claim with Provident in a reasonable amount of time after her covered loss occurred. Of course, the jury may hear evidence on this issue and decide otherwise.

Provident also argues that it is entitled to summary judgment because Rabin failed to satisfy other of the Policies' conditions precedent: failure to give timely Proof of Loss within 90 days after any month for which she claims benefits (Provident's Mem. Summ. J. at 9-10); not receiving care by a physician for her latex allergy as required by the Policies (id. at 10-12) and; inability to establish that she is unable to perform the duties of her "occupation." (Id. at 12-14.) None of these arguments convince us that Provident is entitled to summary judgment because, as we briefly discuss, questions of material fact exist, including whether Rabin was prejudiced by Provident's failure to raise any or all of these defenses before or at the time it denied her claim.

Provident denied Rabin's claim on October 23, 1996, when it sent her a letter stating that it would not pay her benefits because she could perform the duties of an unemployed person. (Provident's LR 56.1 Comb. Stat. ¶ 116; Pl.'s LR 56.1(a)(3) Stmt., Ex. H.) It now seeks to argue that Rabin failed to satisfy the above-listed conditions precedent at the time she filed her claim or after she was denied benefits. Rabin argues that Provident should be estopped from raising such defenses now because she was prejudiced by its failure to raise such defenses at the time it denied her claim. (Pl.'s Resp. to Provident's Summ. J. at 4.) Again, as we discussed supra, Provident is entitled to present its defenses because there is a dispute as to Rabin's claimed prejudice. However, at the same time, material issues of fact remain as to whether Rabin was prejudiced by Provident's failure to raise the defenses at or around the time it denied her benefits. Furthermore, Rabin asserts facts disputed by Provident that refute the substance of Provident's defenses. For example, Rabin

presents physician affidavits that claim she was disabled from her "occupation," while Provident presents its own doctors who state that Rabin is not disabled from working. Further, the parties also dispute what Rabin's "occupation" is (ophthalmologist or corneal surgeon) for purposes of the Policies. These are not the types of disputes that can be resolved on a motion for summary judgment. Thus, Provident's defenses do not support its motion for summary judgment, and Rabin will be entitled to present her facts to the jury, who will decide whether such evidence is enough to defeat Provident's defenses on conditions precedent.

In sum, neither Rabin nor Provident is entitled to summary judgment against the other. We shall now review Rabin and Mass Mutual's cross motions.


## Rabin's Motion for Summary Judgment Against Mass Mutual

Plaintiff moves for summary judgment against Mass Mutual on Count IV (declaration for benefits under the Policy), Count VI (estoppel), Count VII (waiver), and Count VIII (bad faith under Illinois Insurance Code). She asserts she is entitled to judgment on her claims in Count IV because Mass Mutual is either estopped from raising or has waived defenses to her entitlement to benefits, and the defenses Mass Mutual did raise in its termination letter were spurious and contrary to the language of the Policy. Mass Mutual responds that Rabin has failed to demonstrate facts to support estoppel (Count VI) or waiver (Count VII) of other defenses to the contract, and, as a result, it may argue that a genuine issues of material fact exists as to whether Rabin meets the definition of totally disabled and if she does, whether she is disabled from her claimed occupation.

Mass Mutual argues that Rabin has failed to demonstrate under her Count VI (estoppel) that she is entitled to judgment as a matter of law that Mass Mutual is estopped from denying her

disability. (Mass Mutual's Reply at 7-8.) As we noted in our Memorandum Opinion and Order on Mass Mutual's motion to dismiss this claim, under Illinois law, the doctrine of estoppel requires six factors:

> (1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof.

National Tea Co. v. 4600 Club, Inc., 33 Ill. App. 3d 1000, 1003, 339 N.E.2d 515, 518 (1st Dist. 1975) (citations omitted).

While we had determined that Rabin had sufficiently alleged facts to support her estoppel claim to survive a motion to dismiss, she has not demonstrated facts to support judgment on this claim as a matter of law. Of the six factors, Rabin has not demonstrated that Mass Mutual's initial approval amounted to a misrepresentation because it did discover facts after its initial approval that changed its initial assessment of her claim. Namely, it discovered that Rabin did not leave Physicians Plus in July 1995 because she was totally disabled by her latex allergy, but rather due to her husband's relocation. However, even if its initial approval amounted to a misrepresentation, Rabin has not presented facts that she relied and acted on the initial approval of her claim and subsequent payments by spending the money and forgoing other avenues of relief at an earlier stage. Furthermore, Rabin fails to point to any facts to demonstrate that she was unable to prove certain

elements of her disability claim due to Mass Mutual's denial. Thus, Rabin was not prejudiced by Mass Mutual when it denied benefits, and Mass Mutual is not estopped from raising defenses to her claims.

Rabin also fails to demonstrate that she is entitled to judgment on Count VII that Mass Mutual waived its coverage defenses when it initially approved her claim. Rabin argues that when Mass Mutual initially approved her claim, it did not inform her that it was continuing to investigate her claim. However, the waiver inquiry focuses on the conduct of the insurer, not the knowledge of the insured. Essex, 14 F.3d at 1181. Waiver occurs when an insurer does something intentionally or impliedly by its actions, words, knowledge or conduct that is inconsistent with the intention to rely on the requirements of the policy. See Anetsberger v. Metropolitan Life Ins. Co., 14 F.3d 1226, 1233 (7th Cir. 1994). Rabin has not demonstrated that Mass Mutual did anything impliedly or intentionally that demonstrated that it would not rely on the terms of the Policy. While it did initially approve her claim and pay her benefits for a certain period of time, the mere initial payment of benefits is not enough to demonstrate waiver. State Farm Gen. Ins. Co. v. Best in the West Foods, Inc., 282 Ill. App. 3d 470, 485-86, 667 N.E.2d 1340, 1350 (1st Dist. 1996). In fact, just prior to notifying Rabin of approval of her claim, Dowd, Mass Mutual's claim examiner, memorialized a conversation with his boss that indicated that Rabin's claim would be paid while further investigation continued regarding her current and past medical condition. In addition, Dowd requested additional information from Sobel a few days after sending the approval letter. These actions are not consistent with an intention to relinquish rights under the Policy. Furthermore, while Rabin argues that nothing had changed from the time of the approval to the time of the denial, Mass Mutual discovered facts that demonstrated that Rabin was not "Totally Disabled" (as defined in the

Policy) on July 31, 1995, the date she claimed on her claim form. Thus, Mass Mutual did not waive its defenses to Rabin's claim.

Rabin argues that Mass Mutual's reasons for terminating her claim were "spurious," and, as a result, she is entitled to judgment awarding her benefits. Because Mass Mutual argues that those reasons cited in its termination letter give it the basis for summary judgment, we shall evaluate both parties' arguments as a part of Mass Mutual's motion against Rabin.[13]

### Mass Mutual's Motion for Summary Judgment Against Rabin

In April 1997, Mass Mutual terminated Rabin's disability claim after previously determining that Rabin was disabled and due benefits under the Policy. (Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 100-01.) The termination letter stated that Rabin had not satisfied the terms of the Policy because her latex allergy had been accommodated while at Physicians Plus and she left for personal reasons unrelated to her latex allergy. (Mass Mutual's App., Ex. 2, Dowd Dep., Ex. 136.) As a result, Rabin failed to show that her loss of income was due to her disability. (Id.) According to the letter, she did not show a "demonstrated relationship" between the loss of income and her disability. (Id.)

Rabin argues that these cited reasons are "spurious" because Mass Mutual relies on a term of the Policy that is inapplicable to total disability benefits. (Pl.'s Mem. Summ. J. at 8-12.) The term "demonstrated relationship" as cited in the termination letter refers to a term in Rabin's policy

---

[13]    Rabin also moves for judgment under Coverage C of the Group Supplement Rider which provides full monthly benefits if the insured is totally disabled and working in a new occupation. (Pl.'s Mem. Summ. J. at 12-14.) As we discuss infra, Rabin is not entitled to judgment on this policy provision because material issues of fact exist on whether Rabin is totally disabled and/or working in a new occupation.

that appears only with respect to "Partial Disability" benefits. (Pl.'s LR 56.1(a)(3) Stmt. ¶ 109; Mass Mutual's App., Ex. 1 at 2.) Rabin concludes that Mass Mutual's denial on the basis of the lack of "demonstrated relationship" is contrary to the plain wording of the Policy. (Pl.'s Mem. Summ. J. at 9.) Mass Mutual's Policy defines "Totally Disability" as a situation where an insured "cannot perform the main duties of his/her Occupation due to Sickness or Injury." (Mass Mutual's App., Ex. 1 at 2.) "Occupation" is defined as "[t]he Insured's regular profession(s) or business(es) at the start of Disability." (Id. at 1.) According to Rabin, she is entitled to judgment as a matter of law because the Policy does not require she show that she left her employment at Physicians Plus as a result of her latex allergy. Rather, Rabin submits that she is entitled to benefits because she was totally disabled from returning to work as an ophthalmologist sometime between the time she resigned and the time she submitted her claim in May 1996. (Pl.'s Reply at 4.)

Mass Mutual asserts that Rabin's arguments demonstrate her misunderstanding of the Policy terms. Even though its claim examiner used a term that does not apply to the benefits Rabin seeks, Mass Mutual argues that the use of "demonstrated relationship" illustrated its intent to enforce the causal linkage as defined in "Total Disability" between the inability to perform job functions and claimed sickness or injury. According to Mass Mutual, Rabin's Policy, titled "Disability Income Policy," is designed to protect "an individual's income in case of sickness or injury that prevents the individual from maintaining that income." (Mass Mutual's Mem. Summ. J. at 4.) Rabin admits that in July 1995 when she left Physicians Plus she was not totally disabled from her occupation as a ophthalmologist. Mass Mutual draws from this admission that while Rabin was still trained as an ophthalmologist after July 31, 1995, "she had no income from that status the Policy could protect," resulting in no benefits payable to her. (Mass Mutual's Mem. Summ. J. at 5.) It makes this

conclusion based on the definition of "Occupation" as "[t]he Insured's regular profession(s) or business at the start of Disability." (Mass Mutual's App., Ex. 1 at 1) (emphasis added.) According to Mass Mutual, because Rabin was not employed after July 31, 1995, her "regular profession or business" was housewife and mother, not ophthalmologist "at the start of Disability" since Rabin admits that she became disabled sometime after she resigned from Physicians Plus. (Mass Mutual's Mem. Summ. J. at 5.) Further, Rabin never pursued employment opportunities with anyone other than Dr. Stock, and turned down his offer of employment to care for her children. Because she never pursued other employment opportunities as an ophthalmologist, and she earned no income as a housewife and mother, Mass Mutual concludes that "Rabin is not and never has been disabled within the meaning of the Policy provision." (Id.)

We cannot, and presumably Rabin would not, disagree that the Policy is designed to protect the income generated from the insured's occupation. Clearly, it is the loss of income (not the loss of intangible emotional benefits of ophthalmology) that Rabin seeks to supplement with benefits under the Policy. While the Policy protects the loss of income, Rabin owned an additional rider that de-emphasizes the role of income in computing certain benefits. As a part of the Policy, Rabin had an "Own Occupation Rider" that modified her Total Disability Benefits so that if Rabin was earning income in a new occupation, she would still receive the full monthly benefits specified in the Policy. (Mass Mutual's App., Ex. 1 at Own Occupation Rider.) Clearly, loss of income from the insured's occupation is certainly what is protected in the Policy, but Mass Mutual's argument rests on an alleged condition precedent that the insured demonstrate a connection that a disability causes a direct and measurable loss of income. Under most circumstances, that connection likely is firmly established when an insured becomes totally disabled while earning income in a profession or

business. However, in this case, where Rabin became allegedly totally disabled while not earning income as an ophthalmologist/corneal surgeon due to her perceived family obligations, the causal connection is not clearly defined. In fact, there are no terms of the Policy that relate to Rabin's Total Disability claim that state that she must have been earning income at the time she became totally disabled in her occupation. In other words, the Policy does not explicitly exclude coverage for an insured temporarily unemployed from her profession or business.

We also have trouble with Mass Mutual's argument that under the Policy Rabin's "Occupation" after July 1995 has been housewife and mother. First, if the Policy protects against the loss of income, it seems inconsistent with Mass Mutual's position that an insured could have an "Occupation" where she does not earn wages. Thus, unless Rabin had no intention of returning to work as an ophthalmologist/corneal surgeon at the time she became totally disabled, her "Occupation" was that of an ophthalmologist and/or corneal surgeon even though she was unemployed and not earning income in her profession. The facts show that Rabin did interview and initially accept a position with Dr. Stock sometime after she moved to Illinois. Viewing this evidence in the light most favorable to Rabin, we conclude that there is some evidence that she intended to work as an ophthalmologist after she resigned from Physicians Plus. While the parties dispute Rabin's intention or desire to work as an ophthalmologist/corneal surgeon after her move to Naperville, Illinois, as well as, when Rabin's "Total Disability" occurred (and if it occurred at

all)[14], the disputed material issues of fact demonstrate that summary judgment is inappropriate for both Mass Mutual and Rabin.

### Conclusion

Defendants' motion to strike is granted in part and denied in part. Genuine issues of material fact exist which preclude judgment as a matter of law on the claims presented by the parties. Therefore, plaintiff's, Provident's and Mass Mutual's motions for summary judgment are denied. This case is set for a status hearing on August 23, 2000 at 9:15 a.m.

**ENTER:**

**UNITED STATES DISTRICT JUDGE**

DATED: _August 8, 2000_

---

[14] Mass Mutual also alternatively argues that Rabin is not disabled from her claimed occupation. (Mass Mutual's Mem. Summ. J. at 13-14.) Just as in Provident's Motion for Summary Judgment, a material issue of genuine fact exists as to Rabin's disability from her claimed occupation.